IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


TINA LYN FORE,

                    Plaintiff,

vs.                                        Case No. 12-1335-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

                    Defendant.


MEMORANDUM AND ORDER

     This is an action reviewing the final decision of the

Commissioner of Social Security denying the plaintiff

supplemental security income payments.  The matter has been

fully briefed by the parties.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.

§ 405(g), which provides that "the findings of the Commissioner

as to any fact, if supported by substantial evidence, shall be

conclusive."  The court should review the Commissioner's

decision to determine only whether the decision was supported by

substantial evidence and whether the Commissioner applied the

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984

(10th Cir. 1994).  Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If

the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the

claimant's age, education, and past work experience) and to

determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy.

Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of

the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th

Cir. 1993).  At step five, the burden shifts to the

Commissioner to show that the claimant can perform other work

that exists in the national economy.  Nielson, 992 F.2d at 1120;

Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The

Commissioner meets this burden if the decision is supported by

substantial evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will

assess the claimant's residual functional capacity (RFC).  This

RFC assessment is used to evaluate the claim at both step four

and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g);

416.920(a)(4), 416.920(e,f,g).

**II.  History of case**

December 23, 2010, administrative law judge (ALJ) Christina

Young Mein issued her decision (R. at 12-22).  Plaintiff alleges

that she has been disabled since July 17, 2009 (R. at 12).  At

step one, the ALJ found that plaintiff has not engaged in

substantial gainful activity since plaintiff's alleged onset

date of disability (R. at 14).  At step two, the ALJ found that

plaintiff has the following severe impairments:  diabetes,

asthma, status post L5-S1 laminotomy with microdiscectomy,

chronic renal insufficiency, obesity, bipolar disorder, anxiety

disorder, and post traumatic stress disorder (R. at 14).  At

step three, the ALJ determined that plaintiff's impairments do

not meet or equal a listed impairment (R. at 15).  After

determining plaintiff's RFC (R. at 16), the ALJ determined at

step four that plaintiff is unable to perform any past relevant

work (R. at 20).  At step five, the ALJ determined that

plaintiff could perform other jobs that exist in significant

numbers in the national economy (R. at 21).  Therefore, the ALJ

concluded that plaintiff was not disabled (R. at 22).

**III.  Are the ALJ's RFC findings supported by substantial
evidence?**

The ALJ limited plaintiff to sedentary work, with the

following further limitations: never climb ladders, ropes, or

scaffolds; occasionally climb ramps and stairs, balance, stoop,

kneel, crouch, and crawl; avoid concentration exposure to

extreme cold, extreme heat, wetness, vibration, unprotected

heights, moving machinery, and irritants.  In addition,

plaintiff is limited to occupations that require simple,

routine, and repetitive tasks and occasional contact with the public and with co-workers (R. at 16).

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).

In a mental status evaluation performed on November 11, 2009 (R. at 499-500), Dr. Steffan opined the following:

> Ms. Fore's self-reported problems and
> observations of her during the examination
> suggest that she would likely have problems
> in responding appropriately to supervision,
> coworkers, and work pressures in a work
> setting.

(R. at 500). The ALJ discussed the findings of Dr. Steffan, and then stated the following:

> I give **substantial** weight to Dr. Steffan's
> opinions. Dr. Steffan examined the claimant

> in person and his conclusions are generally
> consistent with the record as a whole.

(R. at 18, emphasis added).  The only other mental assessment

was a psychiatric review technique form (PRTF) prepared by Dr.

Rosenshield on December 14, 2009 (R. at 508-518), which opined

that plaintiff did not have a severe mental impairment, and only

had mild difficulties in activities of daily living and in

maintaining social functioning, and mild difficulties in

maintaining concentration, persistence, or pace (R. at 508,

516).  At one point, the ALJ stated that she gave these opinions

"little" weight (R. at 15); at another point in her decision,

the ALJ stated that she gave "some" weight to their opinions (R.

at 20).  However, the PRTF did not address any of the

limitations contained in either the assessment by Dr. Steffan or

the ALJ's RFC findings.  Then, without any explanation, the ALJ

stated that she found that plaintiff is limited to jobs that

require simple tasks and only occasional contact with the public

and co-workers (R. at 20).

The ALJ limited plaintiff to occupations that require

simple, routine, and repetitive tasks and occasional contact

with the public and co-workers (R. at 16).  By contrast, Dr.

Steffan stated that plaintiff would likely have problems in

responding appropriately to "supervision, coworkers, and work

pressures in a work setting" (R. at 500).  The ALJ gave

"substantial" weight to Dr. Steffan's opinions.  However, without explanation, the ALJ only included some of Dr. Steffan's limitations in her RFC findings, while excluding others (problems in responding appropriately to supervision and work pressures in a work setting).  The basic mental demands of unskilled work generally require the ability to respond appropriately to supervision and usual work situations.  SSR 85-15, 1985 WL 56857 at *4; SSR 96-9p, 1996 WL 374185 at *9.

As noted above, SSR 96-8p states that if the RFC opinion conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  In the case of Martinez v. Astrue, 422 Fed. Appx. 719, 724-725 (10th Cir. Apr. 26, 2011), the court held that the ALJ erred by failing to include all of the limitations found by Dr. LaGrand without explaining why he rejected some of the limitations, especially in light of the ALJ's conclusion that the medical source's opinion was entitled to "great weight."  The ALJ simply ignored certain limitations contained in the medical report.  The court held that the ALJ may have had reasons for giving great weight to some of the limitations set forth by the medical source, while rejecting other limitations.  However, before rejecting some of the limitations, the ALJ was required to discuss why he did not include those limitations.  An ALJ should explain why he rejected some limitations contained in a RFC assessment from a

medical source while appearing to adopt other limitations contained in the assessment.  <u>Haga v. Astrue</u>, 482 F.3d 1205, 1208 (10th Cir. 2007).

As in <u>Haga</u>, in the case before the court there is no explanation for why the ALJ adopted some of the limitations contained in the mental RFC assessment, but not others.  The ALJ clearly erred by giving "substantial" weight to the mental RFC assessment, but, without explanation, not including all of the limitations contained in the assessment in her RFC findings.  On remand, the ALJ should either include all of the limitations in the assessment in the RFC findings, or, in the alternative, provide a legally sufficient explanation for not including these limitations in plaintiff's RFC findings.

Plaintiff also noted that Dr. Keairnes had opined that plaintiff avoid even moderate exposure to extreme cold and heat, wetness, vibration and hazards (R. at 522).  Despite the fact that the ALJ gave "great" weight to this opinion (R. at 20), the ALJ's RFC findings only limited plaintiff to concentrated exposure to these environmental factors (R. at 16).  The ALJ did not explain why she did not include these more restrictive limitations by Dr. Keairnes.  Although this issue should be addressed by the ALJ when this case is remanded, the court would note that few occupations in the unskilled sedentary base

require work in environments with extreme cold or heat, wetness, vibration or hazards. SSR 96-9p, 1996 WL 374185 at *9.

As noted above, Dr. Steffan stated that plaintiff would likely have problems in responding appropriately to "work pressures in a work setting" (R. at 500). Dr. Nickel, plaintiff's treating physician, in answer to a question as to whether plaintiff can tolerate work stress, stated that plaintiff is capable of low stress jobs (R. at 592). The ALJ gave little weight to the opinions of Dr. Nickel (the ALJ noted that Dr. Nickel limited plaintiff to less than sedentary work and that he would be absent from work for more than 4 days per month); the ALJ stated that other opinions were given greater weight and are more consistent with the record (R. at 20). In evaluating plaintiff's physical limitations, the ALJ gave "some" weight to the opinions of Dr. Bleazard, an examining physician (R. at 15, 17, 19-20), and "great" weight to the opinions of two state agency medical consultants who did not examine the plaintiff, but reviewed the records (R. at 20).

Plaintiff alleges that the ALJ erred in the relative weight given by the ALJ to the opinions of Dr. Nickel, the treating physician, including his opinion that plaintiff met listed impairment 9.08. The ALJ gave little weight to the opinions of Dr. Nickel (R. at 15, 20). The court will not reweigh the evidence or substitute its judgment for that of the

Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th

Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th

Cir. 2002).  However, the ALJ gave substantial weight to the

opinions of Dr. Steffan, including his opinion that plaintiff

would likely have problems with work pressures in a work

setting.  This opinion is similar to the opinion of Dr. Nickel

that plaintiff would only be capable of a low stress job.[2]  Thus,

---

[2] Although the ALJ limited plaintiff to simple, routine and repetitive tasks, that limitation does not match the opinion of Dr. Steffan that plaintiff would likely have problems responding appropriately to supervision and work pressures in a work setting, or Dr. Nickel's opinion that plaintiff is only capable of low stress jobs.  Moderate impairments may also decrease a claimant's ability to perform simple work.  Bowers v. Astrue, 271 Fed. Appx. 731, 733 (10th Cir. March 26, 2008); see Brosnahan v. Barnhart, 336 F.3d 671, 675 (8th Cir. 2003); Newton v. Chater, 92 F.3d 688, 695 (8th Cir. 1996).  Furthermore, in Wiederholt v. Barnhart, 121 Fed. Appx. 833, 839 (10th Cir. Feb. 8, 2005), the ALJ posed a hypothetical question that limited plaintiff to simple, unskilled work, and omitted from the hypothetical the ALJ's earlier and more specific findings that she had various mild and moderate restrictions.  The court held that the relatively broad, unspecified nature of the description "simple" and "unskilled" did not adequately incorporate additional, more specific findings regarding a claimant's mental impairments (including moderate difficulty in maintaining concentration, persistence, or pace), and therefore the hypothetical question was flawed.  Because of the flawed hypothetical, the court found that the VE's opinion that the claimant could perform other work was therefore not substantial evidence to support the ALJ's decision.  According to SSR 85-15:

> The reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances. The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day. A person may become panicked and develop palpitations, shortness of breath, or feel faint while riding in an elevator; another may experience terror and begin to hallucinate when approached by a stranger asking a question. Thus, the mentally impaired may have difficulty meeting the requirements of even so-called "low-stress" jobs.

> Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job. for example, a busboy need only clear dishes from tables. But an individual with a severe mental disorder may find unmanageable the demands of making sure that he removes all the dishes, does not drop them, and gets the table cleared promptly for the waiter or waitress. Similarly, an individual who cannot tolerate being supervised may not be able to work even in the absence of close supervision; the knowledge that one's work is being judged and evaluated, even when the supervision is remote or indirect, can be intolerable for some mentally impaired persons. Any impairment-related limitations created by an individual's response to demands of work, however, must be reflected in the RFC assessment.

SSR 85-15, 1985 WL 56857 at *6.

the record does establish that at least some of Dr. Nickel's
opinions are consistent with one other medical opinion to which
the ALJ attached substantial weight.  Therefore, on remand, the
ALJ should reevaluate the opinions of Dr. Nickel in light of all
the medical evidence, including the opinions of Dr. Steffan.

IT IS THEREFORE ORDERED that the judgment of the
Commissioner is reversed and remanded pursuant to sentence four
of 42 U.S.C. § 405(g) for further proceedings consistent with
this memorandum and order.

Dated this 28th day of January 2014, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge